# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| **BLAKE SIMON** | **CASE NO.  6:20-CV-00030** |
| **VERSUS** | **JUDGE JUNEAU** |
| **U S COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Court recommends that the Commissioner's decision be AFFIRMED.

## Administrative Proceedings

Claimant, Blake Simon, fully exhausted his administrative remedies before filing this action in federal court. He filed an application for disability insurance benefits on January 9, 2017 alleging disability beginning on June 20, 2016. (Rec. Doc. 12-1, p. 139; 155-56). His application was denied. (Rec. Doc. 12-1, p. 98-107). He then requested a hearing, which was held on October 11, 2018 before Administrative Law Judge Carol Latham. (Rec. Doc. 12-1, p. 40-77).  The ALJ issued a decision on March 21, 2019, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 12-1, p. 25-35).  Claimant requested that

the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 12-1, p. 4-9). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on November 17, 1988. He was 27 years old on the alleged disability onset date and 30 years old at the time of the ALJ's decision. Claimant completed the sixth grade. He obtained some sort of diploma online, but the record is unclear whether it is equivalent to a high school diploma. (Rec. Doc. 12-1, p. 45). He stated that he is dyslexic and does not read well. (Rec. Doc. 12-1, p. 46). He has a driver's license. (Rec. Doc. 12-1, p. 47). He last worked in 2016 as a flagger for road construction. His job history also includes positions as a security guard, Walmart truck unloader, janitor, cook, and seafood salesman. (Rec. Doc. 12-1, p. 47-51). He alleged that he stopped working in June 2016 due to back pain, which had begun at age 15 and had gotten progressively worse. (Rec. Doc. 12-1, p. 50-51). The medical records in the record reveal the following pertinent history:

- Between November 2010 and March 2014, American Legion Hospital emergency room records show several visits for chest pain, headache, and/or

vertigo. He was discharged without further issue following each visit. (Rec. Doc. 12-1, p. 223-77).

- March 31, 2014 – Claimant had a normal cervical spine xray. His lumbar xray revealed no acute osseous defect; likely transitional lumbar vertebral body; and suspect spina bifida at S1. (Rec. Doc. 12-1, p. 223-227).

- He presented as a new patient to Acadia Family Clinic on July 13, 2016 complaining of chronic low back pain and bilateral arm pain for two months. His physical exam showed that he complained of pain radiating into both arms to his fingers. His left arm strength was 4/5; right arm strength was 5/5; bilateral leg strength was 5/5. He wanted to do a full spine MRI but could not afford it, because he had lost his insurance. He weighed 371.4 pounds at that time. (Rec. Doc. 12-1, p. 285).

- A July 29, 2016 note from Acadia Family Clinic indicates he presented with lumbar bulging disc, cervical pain, radiculopathy, and neuropathy, for which he was given Tramadol and referred for MRIs. The written notes from Gina Miller, APRN, FNP-BC, state that when he goes to sleep he gets stiff. He denied weakness in his hands or legs and complained of tingling pain in both legs, but this did not cause him to fall. He had not been taking medications. He was diagnosed with degenerative disc disease/herniated nucleus pulposus.

Ms. Miller was attempting to refer him for a neuro consult due to pain radiating down his arm to his fingers. (Rec. Doc. 12-1, p. 278-79).

- January 22, 2017 – Claimant presented to the Acadia General emergency room after stepping to a floor board and sustaining a right ankle sprain for which he was given medication and released. (Rec. Doc. 12-1, p. 291-97).

- April 23, 2017 – Dr. Bonnie Lammers, the SSA examiner, concluded that Claimant's back exam was essentially within normal limits, and that his back impairment was not established as greater than non-severe. Further, Dr. Lammers found that his obesity was greater than non-severe but that it did not meet or equal a listing, because he retained the ability to do certain activities, such as cook, drive, and shop. Based on Claimant's medical records, she assigned an RFC of light duty with restrictions for occasional heights and stairs. (Rec. Doc. 12-1, p. 99-106).

- On July 24, 2017, Claimant presented to Dr. Felicia Joseph at SWLA Center for Health Services with complaints of chronic mid to low back pain and being unable to work due to pain. He reported degenerative disease/deterioration of spine going back to age 15. He reported that NSAIDs and muscle relaxers were helpful but did not completely relieve the pain. He reported his pain improved with lying flat on his back. He denied weakness in the musculoskeletal exam, but complained of back pain, painful joints, and joint

4

stiffness. The physical exam showed decreased range of motion of spine, lumbar paraspinal tenderness, and negative straight leg test bilaterally. He was referred for a thoracic xray. (Rec. Doc. 12-1, p. 514-16). The August 3, 2017 xray was normal. (Rec. Doc. 12-1, p. 529).

- In a September 11, 2017 visit to Dr. Joseph for diabetes, the physical exam showed decreased range of motion of spine, lumbar paraspinal tenderness, and negative straight leg test bilaterally. (Rec. Doc. 12-1, p. 511-12).

- A September 17, 2017 CT of lumbar spine revealed the following: no acute osseous defect, mild encroachment into the central spinal canal and neural foramina bilaterally at L3-4, L4-5, and L5-S1 secondary to mild broad-based posterior disc bulge and ligamentous hypertrophy. (Rec. Doc. 12-1, p. 444).

- On September 21, 2017, Claimant followed up with Dr. Joseph after having gone to the emergency room for his back pain, where he had been treated with steroids and a Toradol injection. He was diagnosed with lumbosacral strain. He denied sciatica, numbness or weakness of extremities, incontinence, foot drop or trauma. The physical exam showed that he was anxious appearing and presented in moderate or severe pain, with decreased range of motion of the spine and lumbar paraspinal tenderness. The assessment was uncontrolled type 2 diabetes, lumbosacral strain, dorsalgia, chronic pain, and

hyperlipidemia. He was referred for physical therapy. (Rec. Doc. 12-1, p. 509-10).

- October 5, 2017 – Claimant presented to the Acadia St. Landry Hospital complaining of pain and discomfort of sudden onset while driving two weeks prior. He advised of a history of chronic back pain for several years. He complained of needles in his bilateral lower extremities, weakness in the lower extremities and occasional numbness in the finger tips. He complained of pain in the bilateral thigh area with prolonged ambulation. The physical exam showed obesity with guarded posture and lumbar limited range of motion with pain upon flexion, extension, and side flexion. His lower extremity strength was 5/5. The assessment for rehab potential was good to reach his prior level of function. He was to undergo physical therapy. (Rec. Doc. 12-1, p. 419-421).

- During October and November 2017, he underwent several physical therapy sessions at Acadia-St. Landry Hospital. The notes indicate that he sustained improved posture, pain, and mobility, though he had continued complaints of pain. (Rec. Doc. 12-1, p. 422-26).

- In a December 11, 2017 follow up with Dr. Felicia Joseph at SWLA Center for Health Services, Claimant reported that he had completed physical therapy, he continued to experience pain, but it had improved somewhat. He

6

weighed 372.8 pounds, and his BMI was 47.86. The physical exam showed decreased range of motion of the spine and lumbar paraspinal tenderness. Dr. Joseph refilled his medications. He was given exercise materials pertinent to low back pain and instructed to continue current medications and treatments. (Rec. Doc. 12-1, p. 507-08).

- A January 8, 2018 lumbar MRI revealed the following: mild encroachment into the central spinal canal and neural foramina bilaterally at L4-5 secondary to posterior disc bulge and facet hypertrophic changes; mild lumbar spondylosis; transitional lumbar vertebral body with sacralization of L5; early degenerative disc changes evidence at L2-3, L3-4, and L4-5; and mild overall narrowing of the lower lumbar spinal canal/thecal sac likely representing congenital variant. (Rec. Doc. 12-1, p. 434).

- April 5, 2018 – Claimant presented for a neurosurgery consult with Dr. Racheal Wolfson at University Health Shreveport. He complained of low back pain for his whole life starting in the midline low back and radiating down the side of the right leg to just below the knee. He occasionally had symptoms to the left, but not as bad. His back hurt worse than his leg. He had tried NSAIDs, muscle relaxants, and physical therapy without relief. His knee had recently given out while walking, but he felt that it was due to joint dislocation instead of weakness. Dr. Wolfson assessed him with chronic midline low back pain

7

without sciatica. She recommended that he continue physical therapy, lose weight to help with back and knee pain, return for a follow up in three months, and manage pain through his primary care doctor. This note indicates that he was 6 feet, 6 inches and weighed 265 pounds; however, this weight appears to be an error. (Rec. Doc. 12-1, p. 436-38). Claimant testified that he weighed 360 pounds at the October 2018 hearing, which was down about 20 pounds from the prior six months. (Rec. Doc. 12-1, p. 53).

- May 24, 2018 – Claimant again presented to the Acadia St. Landry Hospital with complaints of lumbar pain for several years with gradual increase of his complaints. He had occasional numbness in his bilateral lower extremities. He advised that his right lower extremity "gives way" at times. He was again sent to outpatient physical therapy, which he did during June 2018. During that time he continued to complain of pain in his lower back and right knee. The discharge assessment noted that he continued with pain, his lumbar spine mobility was unchanged, and he reported some improvement in activities of daily living. (Rec. Doc. 12-1, p. 427-33).

- June 19, 2018 – Claimant presented to Bayou Behavioral Health for depression (grief), anger, and mood swings. He reported recent severe mood swings in which he became so angry he blacked out and did not remember what occurred. He had lost his 2 month old son in December 2017 and had

attempted suicide by cutting his arm. He reported having grown up in a "tough neighborhood." He wanted to be able to return to work and to do things on his own. It was noted that he had not worked since 2016 due to severe chronic back pain and trouble with mood swings. He had applied for social security and he wanted to qualify for disability, obtain some form of employment, and/or relief from pain so he could do more things around the house. He reported that his anxiety is so bad that he spends 8 hours in the emergency room due to extreme heart rate. Ms. Deborah Bordelon, LPC, recommended Community Psychiatric Supportive Treatment and medication management. (Rec. Doc. 12-1, p. 447-59).

- On July 5, 2018 Claimant followed up at the neurosurgery clinic at University Health in Shreveport with ongoing lower back pain and bilateral knee pain. He had undergone physical therapy since his initial consultation, which had not helped. He reported isolated knee and lumbar pain with stocking glove numbness and occasional numbness with resting on elbows. The lumbar xray demonstrated good alignment without slippage. The physical exam showed that he moved all extremities well and had 5/5 strength in all categories. The plan was to continue pursuit of weight loss and home stretching exercises. The neurosurgery team was to review the MRI once received and further evaluate.

The lumbar xray report specifically noted degenerative changes with no changes in alignment in flexion and extension. (Rec. Doc. 12-1, p. 438-41).

Claimant testified at the October 11, 2018 hearing that he is attempting to lose weight. He stated that he is unable to do any household activities, because his lower back and legs hurt too much. (Rec. Doc. 12-1, p. 53-54). He currently takes Cyclobenzaprine as a muscle relaxer and Ibuprofen 800 for pain, neither of which help. (Rec. Doc. 12-1, p. 57). Usually he lays in bed and watches TV for eight to ten hours per day. (Rec. Doc. 12-1, p. 58). With regard to his back, he testified that the neurosurgeon in Shreveport told him he was not a candidate for surgery, because his back would not heal properly due to the arthritis. (Rec. Doc. 12-1, p. 60). The record is devoid of any such statement.

The ALJ found that, although he suffers from multiple severe impairments, he has the residual functional capacity (RFC) to perform light work with some physical limitations, and that a substantial number of qualifying jobs exist in the national economy, such that Claimant is not disabled. (Rec. Doc. 25-35). Claimant appealed to the Appeals Council and submitted new evidence in the form of a May 22, 2019 post-hearing lumbar MRI. This study reported a history of low back pain and foot drop of the left foot and revealed the following: interim development of encroachment into the left neural foramina and left central spinal canal at L3-4 secondary to a posterior eccentric disc bulge/herniation to the left and facet

hypertrophic changes; mild encroachment into the neural foramina bilaterally at L4 secondary to mild broad-based posterior disc bulge and facet hypertrophic changes (not significantly changed); transitional lumbar vertebral body with sacralization of L5; mild lumbar spondylosis; and mild overall narrowing of the lower lumbar spinal canal/thecal sac. (Rec. Doc. 12-1, p. 12-13).

The Appeals Council denied review of the additional evidence, finding that it did not relate to the period at issue and therefore did not affect the ALJ's March 21, 2019 ruling. (Rec. Doc. 12-1, p. 5). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a

'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B.  <u>Entitlement to Benefits</u>

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). A person is disabled "if he is unable to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C.    <u>Evaluation Process and Burden of Proof</u>

A sequential five-step inquiry is used to determine whether a claimant is disabled.  The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the

record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

D.    **The ALJ's Findings and Conclusions**

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since June 20, 2016. (Rec. Doc. 12-1, p. 27). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: right foraminal stenosis at L4-5; diffuse mild degenerative changes with hypertrophy at L4-S1; obesity; diabetes mellitus; arthritis of the medial tibial talar joint. (Rec. Doc. 12-1, p. 28). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 12-1, p. 29).  Claimant does not challenge this finding.

In determining Claimant's RFC, the ALJ found that Claimant has the RFC to perform light work, except that he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but never climb ladders, ropes, or scaffolds, and that he must avoid exposure to workplace hazards. (Rec. Doc. 12-1, p. 30).  Claimant challenges this finding to the extent he alleges the ALJ failed to consider his obesity.

At step four, the ALJ found Claimant is unable to perform any past relevant work. Claimant does not challenge this finding.

At step five, the ALJ found that, considering Claimant's age, education, work experience, and RFC, he is capable of performing certain light, unskilled jobs, substantial numbers of which exist in the national economy, such that Claimant is not disabled. (Rec. Doc. 12-1, p. 32-34). Claimant challenges this finding.

**E.     The Allegations of Error**

Claimant alleges the following errors:

1. The ALJ erred in failing to consider the effect of Claimant's sixth grade education and illiteracy, as well as his obesity, in determining Claimant's RFC and the availability of jobs he can perform.

2. The Appeals Council erred in failing to consider new and substantive evidence of Claimant's May 22, 2019 MRI which validated his complaints of pain.

3. The ALJ erred in failing to accept any one of the last three hypotheticals posed to the vocational expert, any one of which would have found Claimant disabled.

**F.     Whether the ALJ properly considered Claimant's education.**

Claimant first contends the ALJ failed to consider his sixth-grade education and "illiteracy" when determining the availability of work he can perform. "The regulations command a finding of not disabled for illiterate or marginally educated claimants whose RFC still permits them to do light or sedentary work." *Perez v. Barnhart*, 415 F.3d 457, 464, fn. 6 (5th Cir. 2005), citing *Hatcher v. Apfel*, 167 F.

16

Supp. 2d 1231, 1238 (D. Kan. 2001) (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 201.18, 202.16–.17). The claimant must show some impact evidence, that is some evidence that his less-than-high-school education affects his ability to perform the jobs suggested by the vocational expert, or how these jobs require more intellectual ability than did his past relevant work. *Id.*

The ALJ determined that Claimant has a "marginal education" (Rec. Doc. 12-1, p. 33), defined as "formal schooling at a sixth grade level or less." 20 CFR 404.1564(b)(1). The record supports this finding. (Rec. Doc. 12-1, p. 45; 160). Further, records from Bayou Behavioral Health state that Claimant has an online high school diploma and no difficulties reading or writing. His estimated literacy level was twelfth grade. (Rec. Doc. 12-1, p. 449). Although he discredited his online diploma (Rec. Doc. 12-1, p. 45), he testified at the hearing that he is able to read and write simple words. (Rec. Doc. 12-1, p. 69). Claimant's work history form indicates that he has worked in various jobs throughout his life that would require him to follow simple instructions. (Rec. Doc. 12-1, p. 184-91). The available jobs considered by the ALJ would require no more intellectual ability than that of Claimant's previous jobs. Compare e.g. prior jobs and recommended jobs at Rec. Doc. 12-1, p. 33 and 34, respectively. Otherwise, there is no evidence in the record of Claimant's illiteracy substantial enough to affect his ability to do the work for

which the ALJ found he qualifies. Thus, the Court agrees that the ALJ adequately considered Claimant's education.

## G.    Whether the ALJ adequately considered Claimant's obesity.

Claimant next contends that the ALJ failed to consider his obesity when considering the availability of jobs he can perform. Social Security Ruling ("SSR") 02-1p recognizes that "[f]or adults, both men and women, the Clinical Guidelines describe ... a [body mass index ('BMI')] of 30.0 or above as 'obesity.'" SSR 02-1p, *Titles II and XVI: Evaluation of Obesity*, 2002 WL 34686281, at *2 (Sept. 12, 2002). The ruling also expressly acknowledges that obesity can cause functional limitations in sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, stooping, crouching, manipulating, as well as the ability to tolerate extreme heat, humidity, or hazards. SSR 02-1p, 2002 WL 34686281, at *6. Thus, although obesity is not a listed impairment, it can reduce an individual's occupational base for work activity in combination with other ailments. See *Holt v. Saul*, No. 4:19-CV-01894, 2020 WL 2549346, at *3 (S.D. Tex. May 19, 2020); *McGee v. Astrue*, No. H-10-575, 2011 WL 11048325, at *3 (S.D. Tex. Feb. 25, 2011). Because it can have such a wide range of effects on a claimant, obesity must be considered at all steps of the sequential evaluation process. SSR 02-1p, 2002 WL 34686281, at *3. See, also, e.g., *Holt v. Saul*, 2020 WL 2549346, at *3; *Perkins v. Berryhill*, No. 4:18-CV-664-A,

2019 WL 2997082, at *2 (N.D. Tex. June 21, 2019), report and recommendation adopted, 2019 WL 2996055 (N.D. Tex. July 9, 2019).

The Court finds that the ALJ gave due consideration to Claimant's obesity in determining his RFC. The ALJ specifically acknowledged that obesity may exacerbate an individual's musculoskeletal pain and functional limitations and specifically considered the adverse effects of the claimant's body habitus in evaluating RFC. (Rec. Doc. 12-1, p. 32). The ALJ relied on the above summarized medical records indicating that, although Claimant's BMI has ranged from 40 to 50, his pain treatment has been only conservative with medication and physical therapy. Substantial evidence supports this finding. (See e.g. Rec. Doc. 12-1, p. 507-16; 436-41). Further, the ALJ noted Claimant's Function Report indicating that he is able to watch TV, go outside and play with the dog, drive, cook, shop, and play games with friends and family. (Rec. Doc. 12-1, p. 176-83). Therefore, the Court finds that substantial evidence supports the ALJ's RFC finding, even upon consideration of Claimant's obesity.

## H.    Whether the Appeals Council erred by not considering the May 22, 2019 MRI report.

Following the ALJ decision, Claimant submitted a May 22, 2019 lumbar MRI report to the Appeals Council. (Rec. Doc. 12-1, p. 4-16). Claimant contends that the Appeals Council failed to consider this new evidence in denying his appeal.

Claimants are free to submit new evidence to the Appeals Council. 20 C.F.R. § 404.968(a). Such evidence is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhard*, 405 F.3d 332, 337 (5th Cir. 2005). The district court must examine all of the evidence, including the new evidence, to determine whether the Commissioner's final decision to deny a claim is supported by substantial evidence. *Sun v. Colvin*, 793 F.3d 502, 510 (5th Cir. 2015). However, newly submitted evidence must be material in that (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003) (per curiam); 20 C.F.R. § 404.970(a)(5). Remand is appropriate only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *Petticrew v. Colvin,* 2014 WL 2880019, at *10 (S.D. Tex. 2014) (citing *Higginbotham*, 163 F. App'x at 281-282).

The Appeals Council found the May 2019 MRI did not relate to the period at issue, in that it was dated after the ALJ's March 21, 2019 decision. (Rec. Doc. 12-1, p. 5). First, the Court acknowledges that the May 22, 2019 radiology report conceivably relates to the time period for which the disability benefits were denied. The MRI of Claimant's lumbar spine is the second such exam in the record and reveals many similar findings as the earlier report of January 8, 2018. (Compare Rec.

20

Doc. 12-1, p. 15-16 and p. 434). Indeed, the reviewing physician, Dr. David Johnson, appeared to compare his findings in the May 22, 2019 report to those in the January 2018 study.  However, a notable exception between the two is the history of foot drop in the left foot, which is noted in the May 22, 2019 MRI report, but does not appear in any prior records. The Court understands that foot drop could be a condition caused by lumbar spine issues or other unrelated issues. See https://www.mayoclinic.org/diseases-conditions/foot-drop/symptoms-causes/syc-20372628 (last visited January 14, 2021). The Court need not resolve whether the new evidence sufficiently relates to the period at issue, because the second inquiry dictates that the new evidence is immaterial.

With regard to the second inquiry, even if the May 2019 MRI report is considered sufficiently related, the Court finds that there is not a reasonable probability that consideration of the new evidence would have changed the outcome of the disability determination. The May 2019 MRI report concludes that many of the findings are "not significantly changed." However, the most recent report states: "L3-4: Encroachment into the left central spinal canal and left neural foramina secondary to a posterior eccentric disc bulge/herniation to the left and facet hypertrophic changes *which has developed since the prior exam*. Degenerative disc changes." (Rec. Doc. 12-1, p 15-16. Emphasis added). Likewise, Dr. Johnson's impression following the May 2019 MRI includes a finding of "interim development

of encroachment into the left neural foramina and left central spinal canal at L3-4 secondary to a posterior eccentric disc bulge/herniation to the left and facet hypertrophic changes." (Rec. Doc. 12-1, p 16). Considering these new objective findings and the absence of any other records addressing this new encroachment or foot drop condition, the Court finds that the new evidence is not material to the claim at issue.

To the extent Claimant may have developed any increased symptoms or newly diagnosed condition that developed after March 21, 2019, the new medical records demonstrate at best a deterioration of a previously non-disabling condition. "Remand [cannot] be based on new evidence of a subsequent deterioration of what was previously correctly held to be a non-disability condition." *Lenoir v. Apfel*, 234 F.3d 29 (5th Cir. Sept. 14, 2000); *accord McLendon v. Barnhart*, 184 F. App'x 430, 432 (5th Cir.2006). If Claimant has evidence that his condition deteriorated to the point that he became disabled after March 21, 2019, he can use the evidence to apply directly to the Social Security Administration for benefits for the appropriate period. *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir.2001)).

## I.  <u>Whether the ALJ properly found Claimant could perform a substantial number of jobs available in the national economy.</u>

Claimant last contends the ALJ erred in failing to consider the last three posed hypotheticals in determining whether Claimant was capable of performing available jobs. The Court interprets this allegation of error as to rely upon the following three

hypotheticals which were posed to the vocational expert: 1) an individual with Claimant's work history limited to light or sedentary unskilled work who would be off task at least 15% of the workday; 2) the same individual who would miss two days of work per month on a consistent basis; and 3) the same individual who must lie down for 15 of thirty minutes every day. In each of the foregoing hypotheticals, the vocational expert opined that the individual would not qualify for any jobs and would thus be disabled. (Rec. Doc. 12-1, p. 75-76).

The ALJ determined that Claimant has the residual functional capacity to perform light work with certain limitations and the provision that he avoid workplace hazards such as moving machinery and unprotected heights. (Rec. Doc. 12-1, p. 30). The ALJ found that Claimant's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the medical evidence, which shows that his treatment has been conservative and that his physical examinations suggest a greater degree of functioning than alleged. The Court finds that substantial evidence supports the ALJ's conclusion.

Medical records presented indicate that Claimant has complained of back pain for years. Although pain can constitute a disabling impairment, pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985); *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d

at 618-19. Mild or moderate pain is not disabling. Subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence. *Id.*

Claimant's treatment to date has consisted of medication and physical therapy. Physical exam findings throughout his medical history show that Claimant had full strength in all extremities, and that his straight leg raise tests were negative bilaterally. (See e.g. Rec. Doc. 12-1, p. 285, 278-79; 419-26; 507-33). Further, physical therapy in some instances improved his posture, pain, and mobility. (Rec. Doc. 12-1, p. 422-26). He has not had any invasive treatment, such as injections or other procedures. Although his lumbar MRI's reveal objective findings, such as disc bulge/herniation, spondylosis, and narrowing, the neurosurgeon who he consulted, Dr. Wolfson, recommended no more than continued conservative treatment, including pain management with his primary care doctor, continued physical therapy, and weight loss. (Rec. Doc. 12-1, p 436-38). Most recently, in July 2018,

Dr. Wolfson recommended that he continue pursuit of weight loss and home stretching exercises. (Rec. Doc. 12-1, p 438-41). Further, Claimant retained the functional ability to care for himself, cook, shop, drive, play outside with the dog, and play games with friends and family. (Rec. Doc. 47; 176-83).

The ALJ also considered the opinion evidence of the SSA medical consultant, Dr. Lammers, who reviewed Claimant's medical records and issued limitations in accordance therewith. (Rec. Doc. 12-1, p. 99-106). The ALJ further considered Claimant's diabetes, which the records reflect does not require the use of insulin (see e.g. Rec. Doc. 12-1, p. 508); his obesity, which has not completely restricted his ability for basic functions (as discussed above); and Claimant's pain and functional limitations (also discussed above), which resulted in the ALJ's finding of a reduced range of work. (Rec. Doc. 12-1, p. 32). The objective records do not support a finding that Claimant would miss 15% of the workday, and/or two days of work per month due to pain, or that Claimant is required to lay down for fifteen out of every thirty minutes. Hence, the Court finds that substantial evidence supports the ALJ's finding and Claimant's third allegation of error lacks merit.

<u>**Conclusion and Recommendation**</u>

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[1]

Signed in Lafayette, Louisiana, this 26th day of January, 2021.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

_____

[1]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).